UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
THE BOARD OF EDUCATION OF THE HARRISON
CENTRAL SCHOOL DISTRICT,

                             Plaintiff,

                      Civil Action No. 7:23-8182

       -against-

C.S. and E.L., on behalf of their minor child, M.L.,

                            Defendant.
-------------------------------------------------------------------

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**Michael Mastrangelo, Esq.**
**Neal Rosenberg, Esq.**
**Law Offices of Neal H. Rosenberg**
**111 John Street, 22nd Floor**
**New York, New York 10038**
**(212) 732-9450**
michael.mastrangelo@nyedlaw.com
**neal.rosenberg@nyedlaw.com**

*Attorneys for the Defendant*

i

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT…………………………….……………………………………1

STATEMENT OF FACTS…………………………………………………………………..1

ARGUMENT……………………………………………………………………...………4

POINT I

DEFERENCE TO THE STATE REVIEW OFFICER……………………………………………4

    A. PROPER SUMMARY JUDGMENT STANDARD IN AN IDEA CASE………………..4

    B. THE SRO PROPERLY DISMISSED PLAINTIFF'S PRONG 1 ARGUMENT FOR
       BEING IMPROPERLY PLED …………………………………………………………...6

POINT II

DEFENDANTS ARE ENTITLED TO TUITION REIMBURSEMENT………………………….10

    A. THE IHO'S FAPE DETERMINATION WARRANTS DEFERENCE…………………10

    B. THERE WAS SUFFICIENT EVIDENCE SUPPORTIVE OF FINDING EAGLE HILL
       TO BE AN APPROPRIATE PLACEMENT FOR THE 2020-2021 SCHOOL YEAR…15

    C. EQUITABLE CONSIDERATIONS WARRANT AN AWARD OF TUITION
       REIMBURSEMENT………………………………………………………………….21

CONCLUSION………………………………………………………………………..……25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A.C. v. Bd. Of Educ. Of Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 171 (2d Cir. 2009) ............. 5

*A.H. ex rel. J.H. v. Department of Educ. of City of New York*, 394 Fed.Appx. 718 (2d Cir. 2010) ................................................................................................................................... 24

*A.H. v. New York City Dept. of Educ.*, (652 F.Supp.2d 297, 312 (E.D.N.Y. 2009) .................... 24

*Board of Educ. of Hendrick Hudson Central School Dist., Westchester Cnty. v. Rowley*, 102 S.Ct. 3034, 3050, 458 U.S. 176, 206 (1982) ................................................................................ 5

*C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 838 (2d Cir. 2014) ......................... 17, 23

*C.W.L. and E.L. v. Pelham Union Free School District*. 149 F.Supp.3d 451, 467 (S.D.N.Y. 2015) ................................................................................................................................... 25

*Carmel Central School Dist. v. V.P. ex rel. G.P.*, 373 F.Supp.2d 402, 418 (S.D.N.Y. 2005)...... 25

*Daimler Chrysler Ins. Co. v. Keller*, 164 A.D.3d 1209, 83 N.Y.S.3d 599 (2018) ...................... 10

*Davis v. Carranza* No. 19 CIV. 10123 (AT), 2021 WL 964820, at *11 (S.D.N.Y. Mar. 15, 2021) ............................................................................................................................... 7, 8

*E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 461 (2d Cir. 2014) ............................ 23, 24

*Erde v. Banks*, No. 21CV9285VSBVF, 2022 WL 18461297, at *8 (S.D.N.Y. Dec. 28, 2022)... 23

*Florence Cnty. School Dist. Four v. Carter By and Through Carter*, 114 S.Ct. 361, 366, 510 U.S. 7, 16 (1993) ................................................................................................................... 21

*Forest Grove School Dist. v. T.A.*, 129 S.Ct. 2484, 2496, 557 U.S. 230, 246 (2009) ................. 21

*G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 751 F. Supp. 2d 552, 570 (S.D.N.Y. 2010) (same), *aff'd*, 486 F. App'x 954 (2d Cir. 2012) ...................................................................... 4

*Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 115 (2d Cir. 2007)................................ 18

*Hardison v. Bd. of Educ. of the Oneonta City Sch. Dist.*, 773 F.3d 372 (2d Cir. 2014) .............. 16

*Hiller by Hiller v. Bd. Of Educ. Of Brunswick Cent. Sch. Dist.*, 674 F. Supp. 73, 77 (N.D.N.Y. 1987)................................................................................................................................ 10

*J.P. ex rel. D.P. v. New York City Dept. of Educ.*, 2012 WL 359977, at *14 (E.D.N.Y. 2012)... 25

*L.K. ex rel. Q v. Northeast School Dist.*, 932 F.Supp.2d 467, 484-492 (S.D.N.Y. 2013) ........... 19

*L.O. v. N.Y.C. Dep't of Educ.*, 822 F.3d 95, 108 (2d Cir. 2016).......................................... 4, 5

*Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 83, n.3 (2d Cir. 2005) ............. 4

*Lombardo v. Mastec N. Am., Inc.*, 68 A.D.3d 935, 936, 893 N.Y.S.2d 78 (2009)...................... 10

*M.C. on behalf of J.C. v. Mamaroneck Union Free Sch. Dist.*, No. 17-CV-1554 (CM), 2018 WL 4997516, at *23 (S.D.N.Y. Sept. 28, 2018) ................................................................. 9

*M.C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 68 (2d Cir. 2000).......................................... 21

*M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 240 (2d Cir. 2012)................................... 4, 5, 16

*Mifflin Cnty. V. Spec. Ed. App. Bd.*, 800 A.2d 1010 (Pa. Cmmw. Ct. 2002)................................ 10

*Orlich v. Helm Bros.*, 160 A.D.2d 135, 560 N.Y.S.2d 10 (1990)........................................... 10

*P.G. v. New York City Dept. of Educ.,* 959 F.Supp.2d 499, 517 (S.D.N.Y., 2013) ..................... 25

*R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 189 (2d Cir. 2012);........................................ 5, 21

*R.H. v. Bd. of Educ. Saugerties Cent. Sch. Dist.*, No. 116CV551GLSCFH, 2018 WL 2304740, at *7 (N.D.N.Y. May 21, 2018), aff'd, 776 F. App'x 719 (2d Cir. 2019) .................................... 16

*S.C. v. Katonah-Lewisboro Cent. Sch. Dist.*, 175 F. Supp. 3d 237, 252 (S.D.N.Y. 2016). ............ 5

*School Committee of Town of Burlington, Mass. v. Department of Educ. of Mass.*, 105 S.Ct. 1996, 2004, 471 U.S. 359, 374 (1985) ................................................................................................ 21

*Stevens ex rel. E.L. v. New York City Dept. of Educ.*, 2010 WL 1005165, at *10 (S.D.N.Y. 2010) .................................................................................................................................................... 25

*T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 252 (2d Cir. 2009) (*per curiam*) ........................................................................................................................................... 4

*T.W. v. Spencerport Cent. Sch. Dist.*, 891 F. Supp. 2d 438, 440 (W.D.N.Y. 2012) ...................... 7

*W.A. v. Hendrick Hudson Cent. Sch. Dist.*, 927 F.3d 126, 144 (2d Cir. 2019), *citing M.H., 685 F.3d at 244* ................................................................................................................................ 6, 15

## Application of a Student with a Disability

SRO No. 03-003 .................................................................................................................................. 23

SRO No. 04-045 .................................................................................................................................. 24

SRO No. 05-030 .................................................................................................................................. 24

SRO No. 05-070 .................................................................................................................................. 23

SRO No. 06-139 .................................................................................................................................... 9

SRO No. 07-098 .................................................................................................................................. 23

SRO No. 12-131 .................................................................................................................................... 7

SRO No. 14-070 .................................................................................................................................... 7

SRO No. 16-080 .................................................................................................................................... 7

SRO No. 21-117 .................................................................................................................................. 22

SRO No. 22-011 .................................................................................................................................... 7

SRO No. 22-131 .................................................................................................................................. 22

SRO No. 23-028 .................................................................................................................................. 22

SRO No. 23-144 .................................................................................................................................... 8

SRO No. 23-167 .................................................................................................................................. 22

SRO No. 23-185 .................................................................................................................................. 22

## Statutes

20 U.S.C. § 1412(a)(10)(C)(iii)(I)(bb) ............................................................................................. 22

20 U.S.C. § 1412(a)(10)(c)(iii)(III) ................................................................................................. 21

20 U.S.C. § 1415(c)(2)(e) ................................................................................................................... 9

N.Y. Comp. Codes R. & Regs. Tit. 8, § 279.13 ................................................................................. 9

N.Y. Comp. Codes R. & Regs. Tit. 8, § 279.8(b) ............................................................................... 7

## PRELIMINARY STATEMENT AND PROCEDURAL HISTORY

The Plaintiff Harrison Central School District ("District or Plaintiff") commenced this action against C.S. and E.L. ("Parents" or "Defendant") on behalf of their minor child, M.L. pursuant to the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1415(e)(2), challenging the 26-page single-spaced June 15, 2023 decision of the New York State Review Officer ("SRO") in decision No. 23-056 ("SRO Decision" or "SD"). The SRO Decision held that, the IHO's determination that the District failed to offer M.L. a Free Appropriate Public Education ("FAPE") during the 2020-2021 school year was final and binding, that the Eagle Hill School ("Eagle Hill") was an appropriate placement for M.L., and that the equities supported 90% tuition reimbursement to the Parents for the 2020-2021 school year.

By agreement of the parties, and by Order of this Court, the parties have proceeded to present their dispute before this Court through the procedure in the nature of a summary judgment motion brought by the Plaintiff.

The Parents submit that the preponderance of the evidence in the administrative record supports the SRO's substantive and well-reasoned decision and that the decision is entitled to deference as the SRO's decision on the issues presented was detailed, thorough, careful.

## STATEMENT OF FACTS

The relevant facts are set forth in detail in the SRO Decision and in the Rule 56.1 Statement and the Defendant's Rule 56.1 Counterstatement and, in the interest of brevity, will not be set forth verbatim herein. A summary of the salient facts is set forth below.

At issue in this appeal is whether the SRO's determination that the Parent was entitled to tuition reimbursement for Eagle Hill during the 2020-2021 school year was proper.

1

M.L. is diagnosed with a Language-based Learning Disorder, Attention Deficit Hyperactivity Disorder Unspecified, Dyslexia, Disorder of Written Expression, Mixed Receptive and Expressive Language Disorder, and Dysgraphia. DE47, 84. M.L. has a history of struggling with reading social cues, interpersonal communication, and cognitive rigidity. DE48. He had been attending Eagle Hill since his second-grade year and the 2020-2021 school year was M.L.'s sixth grade year. M.L. was classified by the District as a student with an Other Health Impairment disability. DE78.

On January 7, 2020, the Parents completed a form entitled "Resident Student Parentally Placed in a Non-Public Schools Outside of District- Planning for the 2020-21 School Year (DE 75). At that time, the Parents indicated that they had not decided on a program for M.L. for the 2020-2021 school year and wanted to consider the CSE's recommendation before deciding on a placement. SD4. The Parents executed a re-enrollment contract with Eagle Hill for the enrollment of the M.L. at Eagle Hill for the 2020-21 school year. PE6.

On May 1, 2020, the Plaintiff's Committee on Special Education ("CSE") convened an annual review to plan for the 2020-2021 school year and develop an IEP for M.L. The CSE determined that M.L. required "a small teacher-to-student ratio program with minimal distractions in order to academically progress." SD4. The CSE recommended placement in a 12:1+1 special class for Reading, English, Math, and Social Studies. The CSE also recommended that the Student attend a 12:1 academic skills class once per day. The CSE recommended a general education Integrated Co-Teaching ("ICT") placement for science class. The CSE recommended that the Student receive speech/language therapy in a small group twice per six day cycle within the special education classroom and speech/language therapy in a small group once per six day cycle in the therapy room. The CSE recommended that the Student receive 1:1 Counseling services once per

six day cycle classroom. The CSE recommended that the Student receive Social Skills Counseling in a small group once per six day cycle.

M.L. attended Eagle Hill for the 2020-2021 school year because the Parents found the CSE's recommendations to be inappropriate to address M.L.'s learning and social-emotional needs. In a due process complaint dated April 28, 2022, the Parents alleged that the District failed to offer M.L. a FAPE for the 2020-2021 school year and requested tuition reimbursement for Eagle Hill as relief.

An impartial hearing commenced on September 21, 2022 and concluded on October 20, 2022 after four days of hearings. In a decision dated February 24, 2024, the IHO determined that the District failed to offer M.L. a FAPE because of the CSE's recommendation for ICT services in science class and because there was no evidence that a general education teacher participated in the May 2020 CSE meeting. The IHO also found that the Parents had not met their burden to demonstrate that Eagle Hill was an appropriate educational placement for M.L. The IHO did not consider equitable considerations having found that the Parents did not establish the appropriateness of Eagle Hill and denied the Parents' request for tuition reimbursement.

The Parents appealed from the IHO's findings that Eagle Hill was not an appropriate unilateral placement and the IHO's denial of tuition reimbursement for Eagle Hill. The District cross-appealed the IHO's finding that the District had failed to provide a FAPE to M.L. In a decision dated June 15, 2023, the SRO awarded the Parents 90% in tuition reimbursement for the cost of Eagle Hill for the 2020-2021 school year. The SRO's decision found that the IHO's determination regarding FAPE should be undisturbed because there was an insufficient basis to overturn the IHO's conclusions that the District failed to offer M.L. a FAPE for the 2020-2021 school year; that there were sufficient reasons to overturn the IHO's finding that Eagle Hill was

not an appropriate unilateral placement and that equitable consideration supported a reduced award in the amount of 90% of Eagle Hill's tuition. SD25.

## ARGUMENT

### POINT I: DEFERENCE TO THE STATE REVIEW OFFICER

#### A.  Proper Summary Judgment Standard in an IDEA Case.

The SRO's Decision is entitled to due deference. The Decision was well reasoned and demonstrated a careful review of the administrative record.

In the IDEA context, the existence of a disputed issue of material fact will not necessarily defeat a motion for summary judgment. *See T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 252 (2d Cir. 2009) (*per curiam*); *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 751 F. Supp. 2d 552, 570 (S.D.N.Y. 2010) (same), *aff'd*, 486 F. App'x 954 (2d Cir. 2012). Summary judgment in IDEA cases is "in substance an appeal from an administrative determination, not a summary judgment." *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 83, n.3 (2d Cir. 2005) (quotation marks omitted); *see also G.B.*, 751 F. Supp. 2d at 570 (same). Therefore, this Court's review "requires a more critical appraisal of the agency determination than clear-error review but falls well short of complete de novo review." *L.O. v. N.Y.C. Dep't of Educ.*, 822 F.3d 95, 108 (2d Cir. 2016) (quotation marks and italics omitted). Accordingly, the Court must "engage in an independent review of the administrative record and make a determination based on a preponderance of the evidence." *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 240 (2d Cir. 2012) (quotation marks omitted).

Such review "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Board of Educ. of Hendrick Hudson Central School Dist., Westchester Cnty. v. Rowley*, 102 S.Ct. 3034, 3050, 458

U.S. 176, 206 (1982). "To the contrary, federal courts reviewing administrative decisions must give due weight to these proceedings, mindful that the judiciary lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *M.H.*, 685 F.3d at 240 (quotation marks omitted).

To merit deference, the IHO and SRO's decisions must be "thorough and careful." *S.C. v. Katonah-Lewisboro Cent. Sch. Dist.*, 175 F. Supp. 3d 237, 252 (S.D.N.Y. 2016). The quality of the decision can be judged on factors such as whether it is "well-reasoned" and "based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 189 (2d Cir. 2012); *see also L.O.*, 822 F.3d at 109 ("To merit deference, the SRO's or IHO's factual findings must be reasoned and supported by the record." (alteration and quotation marks omitted)).

Here, the SRO's decision warrants deference since it meets the requirements of a well-reasoned decision. The Second Circuit has instructed that deference to an SRO's decision is required when the substantive adequacy of an IEP, as opposed to the procedural adequacy, is at issue; when the decision involves a dispute over the appropriate educational methodology versus determinations regarding objective indications of progress; and when the district court's decision is based solely on the administrative record that was before the SRO. *See M.H.*, 685 F.3d at 244.

Moreover, if the SRO and IHO conflict on an issue, the IHO's decision can be given less weight assuming the SRO has reached a reasoned conclusion. In other words, "courts must defer to the reasoned conclusions of the SRO as the final state administrative determination." *Id.* at 246 (emphasis added); *see also A.C. v. Bd. Of Educ. Of Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 171 (2d Cir. 2009). If the Court concludes that "the SRO's determinations are insufficiently reasoned to merit … deference, and in particular where the SRO rejects a more thorough and carefully

considered decision of an IHO, it is entirely appropriate for the court, having in its turn found the SRO's conclusions unpersuasive even after appropriate deference is paid, to consider the IHO's analysis." *M.H.*, 685 F.3d at 246. In addition, "the district court's determination of the persuasiveness of an administrative finding must also be colored by an acute awareness of institutional competence and role. … [T]he purpose of the IDEA is to provide funding to states so that they can provide a decent education for disabled students consistent with their traditional role in educating their residents." *W.A. v. Hendrick Hudson Cent. Sch. Dist.*, 927 F.3d 126, 144 (2d Cir. 2019), *citing M.H., 685 F.3d at 244*.

Here, Plaintiff has failed to show that the SRO Decision lacked quality or persuasiveness. As discussed more in detail below, this Court must defer to the SRO's well-reasoned rulings on Prong 2 and 3, which involved a thorough analysis of the hearing record, which has not changed since the SRO's review. In addition, in regard to Prong 1, deference must be given to the IHO's well-reasoned decision, (undisturbed by the SRO), on the inadequacy of the IEP and the District's FAPE failures.

### B. The SRO Properly Dismissed Plaintiff's Prong 1 Argument for Being Improperly Pled

The Plaintiff alleges, in the Complaint and Plaintiff's Memorandum, that the SRO's decision does not merit deference because the SRO erroneously dismissed Plaintiff's Prong 1 arguments for failing to properly plead the District's FAPE defenses. Briefly, the SRO found that District erred in its pleadings when it presented Prong 1 arguments in the District's attached Memorandum, not in its Answer and Cross-Appeal, a mere three page document. SD9-11. However, on this point, the District's argument and reasoning are flawed. The SRO's decision to dismiss the Plaintiff's Prong 1 arguments was not "arbitrary and capricious," the proper standard of review, and should not be overturned. *Davis v. Carranza* No. 19 CIV. 10123 (AT), 2021 WL

964820, at *11 (S.D.N.Y. Mar. 15, 2021). Additionally, the SRO's ruling on this discreet issue of proper appellate filing should not affect the Court's deference to the SRO, regarding Prong 1 because it is not relevant on the issue of deference in the FAPE context, and the Plaintiff has not cited authority that suggests otherwise. And, finally, as discussed herein, the IHO's decision on the District's failure to meet its FAPE obligations was well reasoned and based on the facts and the law.

The relevant regulation for appellate pleading clearly states that a party shall not circumvent page limitations through incorporation by reference. *See* N.Y. Comp. Codes R. & Regs. Tit. 8, § 279.8(b). In other words, a memorandum of law cannot be a substitute for a pleading. *See also, Application of a Child with a Disability*, SRO No. 22-011. The SRO has consistently ruled that issues must be outlined in the appellate pleadings and to do otherwise would effectively bypass the page limits contained in the regulations. *Application of a Child with a Disability*, SRO No. 22-011; SRO No. 19-021; SRO No. 16-080; SRO No. 14-070; and SRO No. 12-131

As explained in *Davis*, the Second Circuit has not addressed the standard of review a District Court should use when an SRO dismisses claims for failure to comply with pleading requirements. *See* 2021 WL 964820, at *11. In *Davis*, the Court ruled that it makes the most sense to use the "arbitrary and capricious" standard of review, which is applied for review of dismissals on procedural grounds. *Id.* An arbitrary and capricious review depends on whether the original fact finder reviewed relevant factors and whether there was a clear error of judgment. *T.W. v. Spencerport Cent. Sch. Dist.*, 891 F. Supp. 2d 438, 440 (W.D.N.Y. 2012) *quoting, State of New York Dep't of Soc. Serv. V. Shalala*, 21 F.3d 485, 492 (2d Cir.1994).

Here, the SRO committed no error of judgment after a review of the relevant factors. The District's Answer and Cross Appeal only broadly concluded that the IHO incorrectly found that the District failed to offer the Student a FAPE for the 2020-2021 school year and that the IHO failed to consider the totality of the program offered. SD9. As the SRO noted, the IHO's ruling on the District's FAPE obligations turned on distinct two issues: the recommendation of ICT in science being improper and the lack of a general education teacher at the IEP meeting. SD9. These critical issues were not mentioned in the District's Answer and Cross Appeal, and were only discussed in its accompanying Memorandum. SD9. The SRO's dismissal was not arbitrary and capricious because the District's failure to include these two essential issues in its pleading was egregious. There is no logical reason the District could not even cite to these two issues in its pleading, considering they still had seven pages left to fill in the District's pleading, and these issues were pivotal in the IHO's decision on the District's FAPE failures.

For comparison, in *Davis*, the Court determined that allegations not raised in the Guardian's RFR, but in the memorandum, were properly ignored by the SRO. *Davis*, 2021 WL 964820, at *13. The *Davis* Court explained that it was not arbitrary and capricious for the SRO to rule that the Guardian erred by only discussing the evaluations' sufficiency in the memorandum instead of the RFR as well. *Id.*

Moreover, the SRO's ruling here was not arbitrary and capricious, considering that District's counsel was already on notice of this pleading requirement. SD,11. The SRO's reference to a previous appeal wherein District's counsel made the same error was not an "ad hominin" attack, but was meant to emphasize the District's flagrant disregard of the pleading regulations. Plaintiff's Memorandum of Law, 10; *See Application of a Child with a Disability*, SRO No. 23-144 ("an SRO may be more inclined to [exercise their discretion to dismiss a claim] after a party's

repeated failure to comply with the practice requirements"). The District's failure to follow the SRO's pleading rules was significant in light of this previous censure and the fact that the regulations are clearly delineated on the SRO webpage for the public, which parties must access in order to file an appeal online.[1]

Plaintiff argues that the SRO's dismissal was made "in error" because it was done sua sponte. Plaintiff's Memorandum of Law, 9. Analogous to state regulations which give the SRO the authority to dismiss sua sponte a Request For Review for being untimely, it is reasonable that the SRO would dismiss sua sponte for other procedural errors related to proper pleading procedures. *See* N.Y. Comp. Codes R. & Regs. Tit. 8, § 279.13. In the District's Answer and Cross Appeal, Plaintiff had an obligation to "clearly specify their reasons for challenging the IHO's decision; to identify the precise rulings presented for review; and to cite to the pertinent portions of the record on appeal." *M.C. on behalf of J.C. v. Mamaroneck Union Free Sch. Dist.*, No. 17-CV-1554 (CM), 2018 WL 4997516, at *23 (S.D.N.Y. Sept. 28, 2018)(quotations omitted)(The Answer and Cross Appeal failed to "identify the precise rulings presented for review" and "cite to the pertinent portions of the record on appeal, as required in order to raise an issue on cross-appeal"). Similar to the Petitioners in *M.C.*, Plaintiff's broad assertion in its pleading was insufficient and therefore properly dismissed.

Upon closer review, the cases cited by Counsel, in support of the District's argument against the SRO's sua sponte dismissal, are irrelevant and outdated. Plaintiff's Memorandum of Law, 9-10. In *Application of a Child with a Disability*, SRO No. 06-139, the issue concerned not appellate procedural rule § 279.8, but rather the pleading requirements for a due process complaint. *See* 20 U.S.C. § 1415(c)(2)(e). The *Hiller* case is outdated and not appliable here. *Hiller by Hiller*

---

[1] *See* https://www.sro.nysed.gov/book/%C2%A7-2798-pleadings-and-memoranda-law.

*v. Bd. Of Educ. Of Brunswick Cent. Sch. Dist.*, 674 F. Supp. 73, 77 (N.D.N.Y. 1987). *Hiller* was decided before the IDEA was created[2] and it concerned the Commissioner reversing the CSE's finding that a student was eligible for special education services. These circumstances are not relevant or pertinent here. Moreover, the remaining cases cited by Plaintiff are not binding on this Court or relevant. *See Mifflin Cnty. V. Spec. Ed. App. Bd.*, 800 A.2d 1010 (Pa. Cmmw. Ct. 2002); *Daimler Chrysler Ins. Co. v. Keller*, 164 A.D.3d 1209, 83 N.Y.S.3d 599 (2018); *Lombardo v. Mastec N. Am., Inc.*, 68 A.D.3d 935, 936, 893 N.Y.S.2d 78 (2009); *Orlich v. Helm Bros.*, 160 A.D.2d 135, 560 N.Y.S.2d 10 (1990).

## POINT II: DEFENDANTS ARE ENTITLED TO TUITION REIMBURSEMENT

### A. The IHO's FAPE Determination Warrants Deference

As discussed above, the SRO properly determined that the because of the Plaintiff's failure to properly plead its argument related to the IHO's determination that it denied the Student a FAPE, the IHO's finding on the Plaintiff's failure to offer the Student a FAPE for the 2020-2021 school year has become final and binding. SD10. In the instant matter, this Court, applying proper deference to the IHO's reasoning and the SRO's determination, should likewise find the IHO's determination on Prong I final and binding and find that the Plaintiff failed to offer the Student a FAPE for the 2020-2021 school year.

However, if this Court determines that it must conduct a Prong 1 analysis to determine whether the Plaintiff offered the Student a FAPE for the 2020-2021 school year, this Court should uphold the IHO's determination that the Plaintiff failed to offer M.L. a FAPE for the 2020-2021 school year.

---

[2] https://sites.ed.gov/idea/IDEA-History.

The Plaintiff makes three arguments in support of its position that the IHO incorrectly ruled on Prong 1. The Plaintiff argues that the IEP met the procedural and substantive requirements of the IDEA and State Law; that the IHO incorrectly found that the absence of a general education teacher at M.L.'s May 1, 20202 annual review meeting resulted in a denial of FAPE, and that the IHO incorrectly found that the ICT science class recommended for M.L. was inappropriate. The

The Plaintiff argues that the May 12, 2020 CSE was duly comprised. However, the record establishes and the IHO ruled that the CSE lacked a general education teacher. DE74,78, I16. Thus, the Plaintiff's contention that the CSE was duly comprised and therefore the procedural requirements of the IDEA and State Law were not met. The IHO correctly found that because a general education class was recommended, a general education teacher should have been present at the meeting. I18

The Plaintiff argues that the IEP for the 2020-2021 school year was substantively appropriate. However, the record establishes that the IEP and program recommendation were not reasonably calculated to enable M.L. to make progress appropriate in light of his circumstances. The Plaintiff notes that "with the understanding that M.L. was accustomed to small classes at Eagle Hill and to address M.L.'s speech and language deficiencies, the CSE recommended the Plaintiff's Small Group Instruction ("SGI") program [which] consisted of special classes for English Language Arts ("ELA"), Math, and Social Studies with a 12:1:1 ratio (no more than twelve students in the class, one special education teacher, and one aide) with the same dedicated special education teacher in all three special classes and aide to support the instruction and to implement the accommodations on M.L.'s IEP. Plaintiff's Memorandum of Law, 11.

However, at hearing, the Plaintiff failed to establish how this program would have addressed all of M.L.'s learning and social-emotional needs. The May 2020 IEP notes that M.L.

"is not able to solve social problems without support. [M.L.] struggles with peer interactions and perspective taking. He also lacks coping strategies for dealing with frustration and can be rigid in his thinking. [M.L.] requires support in the classroom to help with these skills." DE84. Further, the Plaintiff's psychological evaluation noted significant areas of concerns that were not addressed in the Plaintiff's IEP or program recommendation including poor concentration and attention, high activity levels, restless impulsive, struggles with reading, spelling and/or math, difficulty remembering concepts, difficulty starting or finishing projects, poor planning, may be argumentative, may defy requests, may have poor control of anger, may display aggressive behaviors, difficulty with friendships, poor social skills, limited social skills, seems to be unaccepted by group.  DE49-57.

The Plaintiff failed to establish how specifically the SGI program would have appropriately addressed these needs. Furthermore, the SGI program was the only available small, special education class for sixth grade students within the District public school placement and the District failed to consider any other type of learning environment for M.L. T.71. Ultimately, the District recommended the only small special education class it could offer for the 2020-2021 school year, without regard for how that program would be able to address M.L.'s learning and social-emotional needs.

Additionally, the IHO determined that placement in an ICT class for science deprived M.L. of a FAPE and the District was unable to provide a cogent and responsive explanation for this placement decision. To the contrary, the Plaintiff's evidence establishes that the program recommendation was based more on what programs were available to a sixth grader at the Plaintiff's public school rather than a program that was tailored to M.L.'s needs.

12

Furthermore, the Plaintiff's arguments before this Court do not accurately reflect the record and fail to establish that the Plaintiff's placement in an ICT class offered M.L. a FAPE. In fact, the Plaintiff misconstrues the language of the IHO's decision in its Memorandum of Law, stating,: "as noted by IHO Walsh '[t] proposed program as set out in the I.E.P. would provide M.L. with not only an appropriate program, but a robust one." District's Memorandum of Law, 13. This is an obvious mischaracterization of the IHO's reasoning and omits the entirety of the IHO's statement on this point. The actual language of the decision reads:

> "All District witnesses testified that the proposed program as set out in the I.E.P. would provide the Student with not only an appropriate program, but a robust one. However, I have great concern regarding the placement of Student in an Integrated Co-teaching Class for Science one period daily. I note that all other educational placements were in a 12:1+1 setting, with the small number of students somewhat comparable [to] Student's settings at Eagle Hill School, which, according to District's witnesses, District was attempting to continue. Placing Student in an Integrated Classroom setting – even with his Special Education Teacher present – would not address the real possibility of Student having negative interaction with other – and unfamiliar students. District was aware from the Psychological evaluation conducted by District Psychologist Baruch-Feldman (DE49-57) that Student had Very Elevated Scores in Hyperactivity/Impulsivity; Defiance/Aggression; and Peer Relations." I17-I18.

The record establishes that the IHO considered the evidence and testimony and found that the placement of the Student in an ICT program for part of the school day was a deprivation of FAPE I18. This finding is well-reasoned and the IHO's concerns are in line with all of the educational experts who testified that the Student required placement in an educational setting with a small number of students. I16. In fact,. Jennifer Toscano ("Ms. Toscano") testified that the primary reason that the M.L. was recommended for a 12:1+1 class was because he was in a small class at Eagle Hill and that the transition to an ICT class would be too difficult. T54 Ms. Toscano's acknowledgement that an ICT class was not appropriate for M.L. is important; despite this acknowledgement by the CSE, it recommended an ICT class for science. Further, the record

establishes and the IHO correctly determined that due to the M.L.'s social-emotional challenges, the ICT science class was not appropriate. I18. M.L.'s significant attentional, social-emotional challenges including his anxiety, inflexible thinking, and a tendency to perseverate on his particular anxieties about incidents at school and academic deficits, placement in an ICT class, for even one period of the school day, was detrimental for M.L. T359, 367 An ICT class would consist of many more students in a classroom than M.L. was accustomed to. As such, with more students, his distractibility and inability to stay on task would undoubtedly be exacerbated. Further, placement in such a class would also increase the risk of interpersonal anxieties. As Dr. Greisberg testified, the M.L. tends to perseverate on anxieties having to do with what M.L. saw as negative peer interactions. T367. Placing the Student in a classroom of more than twenty students would have exacerbated these anxieties, opportunities for negative peer interactions alongside general education students, and also exacerbated his attentional challenges and tendency to "check out" from class. T462. Further, all the evaluative material available to the CSE at the time of the May 2020 meeting supported the contention that M.L. could not function in a large, less structured ICT class.

The Plaintiff gave several reasons why ICT for science was recommended, but none of these reasons provided a sound justification for the recommendation. The Plaintiff contends that ICT was recommended for science because science was an area of relative strength for M.L. However, the record establishes that math was a relative area of strength, not science[3]. T72 Jan Bailey ("Ms. Bailey") testified, "at the middle school level our science classes are offered to our students who receive education in a self-contained setting, in a co-teach setting because science is

---

[3] In fact, the CSE discussed the possibility of placement in an ICT class for math given M.L.'s notable strengths in math, but as the IEP noted, an ICT class for math "was rejected especially as a transition plan to LMK middle school." Tr. 54, T72. A similar rejection was not made for the ICT science class because that was all the middle school could offer notwithstanding M.L.'s learning needs. DE78

best taught in the science lab. So, our students that might be placed in a self-contained 12:1+1, when they attend science, they attend with the special education teacher and it needs to take place in the science lab where science experiments and things can occur." T.172. In actuality, there was no special class option for science and only an ICT class was available. T75. Thus, the ICT recommendation was made because of class availability, and not because of M.L.'s needs. For these reasons, the IHO correctly found that the ICT science class was not appropriate for the Student and the District's program failed to offer a FAPE to M.L.

### B. There Was Sufficient Evidence Supportive Of Finding Eagle Hill To Be An Appropriate Placement For The 2020-2021 School Year.

The SRO's determination that Eagle Hill provided the Student with an appropriate special education program for the 2020-2021 school year is proper and supported by the evidence in the hearing record. Here, the Parents met their burden of showing that, based on a totality of the circumstances, the educational instruction at Eagle Hill was specially designed to meet the Student's unique needs. Additionally, there is no requirement that the evidence in support of unilateral placement must be objective, as the Plaintiff argues. Plaintiff's Memorandum of Law, 17. The Second Circuit has noted that the proper of standard of review of a parent's unilateral placement is as follows:

> "[T]he private school placement "must be reasonably calculated to enable the child to receive educational benefits." *M.H.*, 685 F.3d at 252 (internal quotation marks omitted). "Grades, test scores, and regular advancement may constitute evidence that a child is receiving educational benefit, but courts assessing the propriety of a unilateral placement consider the totality of the circumstances in determining whether that placement reasonably serves a child's individual needs." *Frank G. v. Bd. Of Educ. Of Hyde Park*, 459 F.3d 356, 364 (2d Cir. 2006). Even where the private placement yields evidence of the child's success, however: courts should not disturb a state's denial of IDEA reimbursement where the chief benefits of the chosen school are the kind of advantages that might be preferred by parents of any child, disabled or not. Rather, the unilateral private placement is only appropriate if it provides education instruction [specially] designed to meet the unique needs of a handicapped child. *W.A.*, 927 F.3d 126, 146.

In Point II of Plaintiff's Memorandum, Plaintiff distorts the Second Circuit's reasoning into stating that the Second Circuit "requires objective evidence of progress." Plaintiff's Memorandum of Law, 17; *Hardison v. Bd. of Educ. of the Oneonta City Sch. Dist.*, 773 F.3d 372 (2d Cir. 2014). In *Hardison*, the Second Circuit ultimately found it appropriate to defer to the SRO's determination that the parents had failed to meet their burden of establishing the appropriateness of their placement. *Hardison*, 773 F.3d at 386. However, the *Hardison* decision rested in large part on the fact that the parents' case relied chiefly on the testimony from one private school witness, an administrator who could neither detail how the student was progressing academically nor explain the school's special education supports. *Id.* at 383, 387. Nothing in the *Hardison* suggests that parents have a burden of producing objective evidence of Student progress at a unilateral placement. In fact, the *Hardison* Court explicitly stated that objective evidence is "preferable," not required. [4] *Id.* at 387. The main problem in *Hardison* was the lack of evidence tying in the student's psychological progress to the student's educational progress. *Id.* Therefore, the Court deferred to the SRO, who determined that the record lacked sufficient information regarding how the school provided instruction specifically designed to meet the student's unique needs. *Id.* at 388.

In this matter, in accordance with the preponderance of evidence standard, the SRO conducted a careful and thorough review of Eagle Hill, and its conclusion that the Eagle Hill was appropriate is entitled to deference. *M.H.*, 685 F.3d at 248; SD11-22. Courts reviewing state institutional decision-makers in IDEA cases must be mindful that a "court's determination of the

---

[4] Plaintiffs also reference the decision in *R.H.* to bolster their claim that evidence must be objective, but the Court in that case also stated that objective evidence is "preferable" not required in a Prong 2 analysis. *R.H. v. Bd. of Educ. Saugerties Cent. Sch. Dist.*, No. 116CV551GLSCFH, 2018 WL 2304740, at *7 (N.D.N.Y. May 21, 2018), aff'd, 776 F. App'x 719 (2d Cir. 2019), *citing Frank G.*, 459 F.3d at 364, 366; Plaintiff's Memorandum of Law, 19. Moreover, the R.H. Court deferred to the SRO's use of the "totality of circumstances" standard, in which the objectiveness of the evidence was one of three factors the SRO considered. *R.H.*, at *6.

persuasiveness of an administrative finding must also be colored by an acute awareness of institutional competence and role." *Id.* at 244. Here, the SRO's ruling was grounded in a thorough review of how the Student's program at Eagle Hill was specifically designed to provide the Student instruction tailored to his unique needs. *Cf., C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 838 (2d Cir. 2014) (declining to afford deference to SRO where its opinion "was not sufficiently reasoned or carefully considered because the SRO did not consider or comment on any of the specific services provided to [the student at the private school] or the progress that the record shows he made at the school"). The SRO credited the testimony of the three witnesses and the extensive documentary evidence regarding the Student's needs, Eagle Hill's targeted programming, and the Student's progress. SD11-22.

The SRO's Decision includes a thorough review of evidence of the Student's abilities and an in-depth analysis of how Eagle Hill's programming targeted his needs. SD12-22. In short, the Student's learning was negatively affected by struggles with academic, attentional, executive functioning, and social-emotional deficits. SD12-15. The SRO's analysis included a review of the documentation in the hearing record, which included: an education evaluation, occupational therapy evaluation, classroom observation, speech and language evaluation, social history, psychological evaluation, letter from a treating speech pathologist, Eagle Hill school reports, and a May 2020 IEP. *Id*. The SRO detailed the findings of each of these reports, each referencing the Student's deficits and abilities and corresponding interventions required to address them. *Id.* 12-22. For example, the SRO noted the classroom evaluation, submitted by the District, which described the Student's tardiness for class, need for constant reminders and redirection, inability to keep up with the pace of the work in class, and multiplication weaknesses. *Id.* at 13. In addition, the SRO referenced the IEP, submitted from the District, which reported on the Student's

impulsivity, struggles with math problems and reading comprehension, rigid thinking, and social problems with peers. *Id.* at 15.

The SRO's decision was thorough and well-reasoned analysis of how, under a totality of the circumstances, Eagle Hill met each of the Student's deficits. *Id.* at 16-22. The SRO reviewed Eagle Hills' targeted interventions in each subject, the assessments conducted by the staff there, and the Eagle Hill's related services. The SRO reviewed testimony that Eagle Hill's teachers were special education educators who worked in conjunction with their speech-language department to provide instruction based on students with language based needs like the Student in this case. *Id.* at 16. The SRO went into detail going through the curriculum and methodologies implemented to help the Student appropriately progress. *Id.* at 16-22. For example, the SRO credited testimony that the Student benefited from the School providing him with extra help, in addition to the methodologies and strategies he learned in class, because of those 80 minutes per day of targeted tutorials or "intensity of instruction." *Id.* at 17.

Plaintiff's argument against the SRO's Prong 2 finding centers around two issues: the Student's assessments were not objective and none of the teachers from Eagle Hill testified.

On the first point, it is well settled that a student's progress in a unilateral placement, while relevant in a court's inquiry, cannot alone demonstrate the appropriateness of that placement. *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 115 (2d Cir. 2007). Nonetheless, Plaintiffs are wrong because the SRO did acknowledge that, over the course of the year, Eagle Hill's reports showed the Student's progress in his organizational skills, literacy skills, math, writing, task perseverance, working memory, managing his anxiety, and social skills. SD18-20. As the SRO noted, the progress reports were not entirely subjective because they also referenced his continued weaknesses in certain areas. *Id.* at 20. Additionally, the reports cannot be dismissed as subjective

merely because the private school teachers wrote them. As the SRO suggests, it makes sense that the reports on the Student's academic progress would come from his teachers, who are tasked with regularly evaluating and assessing students. *Id.*

Regarding the Plaintiff's second point, there is no requirement that teachers who prepare progress reports must provide oral testimony. As the SRO noted, under the IDEA scheme, there is a preference for documentary evidence. *Id.* at fn. 12. Notably, the Student's IEP incorporated these reports from Eagle Hill. It is disingenuous for the District to now try to discredit these reports. Plaintiff's Memorandum of Law, 17-19. Moreover, the SRO's reasoning on this point does not "directly contradict caselaw," as the Plaintiff argues. Plaintiff's Memorandum of Law, 19. In *L.K.*, cited by Plaintiff, Judge Ramos deferred to the SRO's educational experience, evaluation of the unilateral placement's progress reports, and determination that the lack of oral testimony from the teachers weakened the parents' case. *L.K. ex rel. Q v. Northeast School Dist.*, 932 F.Supp.2d 467, 484-492 (S.D.N.Y. 2013). Similarly, here, the SRO's final decision also warrants deference based on his determination that the progress reports and testimony from the Defendants' witnesses sufficiently highlighted the appropriateness of Eagle Hill. SD11-22.

Furthermore, the Plaintiff argues that the SRO discounted the fact that Eagle Hill was not the least restrictive environment ("LRE"). Plaintiff's Memorandum of Law, 18. To the contrary, the SRO provided a well-reasoned rationale for opposing the IHO's ruling on LRE. SD22. It is well settled that although the restrictiveness of a parent's unilateral placement may be considered as a factor in determining whether parents are entitled to an award of tuition reimbursement (*M.S. v. Bd. of Educ. of the City Sch. Dist. of Yonkers*, 231 F.3d 96, 105 (2d Cir. 2000); *Walczak*, 142 F.3d at 122; *see Rafferty v. Cranston Pub. Sch. Comm*., 315 F.3d 21, 26-27 (1st Cir. 2002)), parents are not as strictly held to the standard of placement in the LRE as are school districts, (*see C.L. v.*

*Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 830, 836-37 (2d Cir. 2014)(noting "while the restrictiveness of a private placement is a factor, by no means is it dispositive" and furthermore, "[i]nflexibly requiring that the parents secure a private school that is nonrestrictive, or at least as nonrestrictive as the FAPE-denying public school, would undermine the right of unilateral withdrawal the Supreme Court recognized in Burlington"; *see also Carter*, 510 U.S. at 14-15; *M.S.*, 231 F.3d at 105 (stating that parents "may not be subject to the same mainstreaming requirements as a school board")) and "the totality of the circumstances" must be considered in determining the appropriateness of the unilateral placement, (*see Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 364 (2d Cir. 2006)).

The SRO correctly pointed out the contradictions in the IHO's decision on this point, noting that:

> "[O]ne of the reasons the IHO found the district's placement to be inappropriate was that it did not recommend a full-time special education program for the student, recommending ICT services in a general education classroom for one period per day instead – specifically noting his concern that the program did not address the real possibility of the student having negative interaction with other—and unfamiliar—students. (IHO Decision, 16). It would seem that the program at Eagle Hill, providing special education classes for the student, rectified the IHO's main concern about the public school placement; it appears contradictory for the IHO to have found the program at Eagle Hill inappropriate for this exact reason." SD22.

Ultimately, the SRO properly considered the totality of the circumstances and determined that Eagle Hill provided the student with specially designed instruction to address his identified needs and resulted in the Student's reported progress. *Id.* 22. The SRO found that, "even if they were at issue, LRE considerations would not weigh so heavily as to preclude the determination that the parents' unilateral placement of the student at Eagle Hill for the 2020-2021 school year was appropriate. (*C.L.*, 744 F.3d at 837; *Gagliardo*, 489 F.3d at 112; *see Frank G.*, 459 F.3d at 364-65).

**C.  <u>Equitable Considerations Warrant An Award Of Tuition Reimbursement</u>**

The final criterion for a reimbursement award is that the Parents' claim must be supported by equitable considerations. Equitable considerations are relevant when fashioning relief under the IDEA. *School Committee of Town of Burlington, Mass. v. Department of Educ. of Mass.*, 105 S.Ct. 1996, 2004, 471 U.S. 359, 374 (1985); *R.E.*, 694 F.3d at 185, 194; *M.C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 68 (2d Cir. 2000); *see Florence Cnty. School Dist. Four v. Carter By and Through Carter*, 114 S.Ct. 361, 366, 510 U.S. 7, 16 (1993)(courts fashioning discretionary equitable relief under IDEA must consider all relevant factors, including the appropriate and reasonable level of reimbursement that should be required, total reimbursement will not be appropriate if the court determines that the cost of the private education was unreasonable). Such equitable considerations include "the reasonableness of the parties' positions." *Burlington*, 736 F.2d at 801-802. Indeed, the IDEA states that tuition reimbursement may be "reduced or denied . . . upon a judicial finding of unreasonableness with respect to actions taken by the Parents'." 20 U.S.C. § 1412(a)(10)(c)(iii)(III). In addition, a Parent must give the District an opportunity to cure alleged defects in a student's educational program. *See Forest Grove School Dist. v. T.A.*, 129 S.Ct. 2484, 2496, 557 U.S. 230, 246 (2009)(courts retain discretion to reduce the amount of a reimbursement award if the equities so warrant, for instance, if the Parents' failed to give the school district adequate notice of their intent to enroll the child in private school).

The District's argument hinges on two claims: the Parents did not submit a timely TDN or notice to the District (Plaintiff's Memorandum of Law, 20-24) and the Parents had no intention of enrolling the Student in a public school (*id.* 21; 25-27).

Contrary to the District's assertions, the hearing record aptly demonstrates that the Parents acted reasonably under the circumstances of this case and cooperated with the District in good

faith to develop an appropriate IEP for the Student. SD24 . The Parents did nothing to hinder the District from developing an IEP or making a program recommendation. Although the Parents' requested relief for the 2020-2021 school year was untimely, the District's conduct and failures leading up to the school year is relevant for the purpose of equitable circumstances. The SRO properly considered the same hearing record before this Court and its determination on equitable circumstances should not be disturbed.

At the outset, the SRO properly considered the Parents failure to submit a timely Ten Day Notice ("TDN"). The SRO's decision to slightly reduce the tuition award by 10% is well supported by case law. SD25. Under the IDEA, the "cost of reimbursement [for a private school placement] may be reduced or denied" if 10 business days (including any holidays that occur on a business day) prior to the removal of the child from the public school, the parents did not give written notice to the public agency of the information described in item (aa)." *See* 20 U.S.C. § 1412(a)(10)(C)(iii)(I)(bb).

There is an extensive history of cases wherein the parents' requested relief was reduced by a small percentage, instead of an outright denial, when weighing all equitable considerations in a case. *See Student with a Disability*, SRO No. 23-185 (an untimely TDN did not warrant a complete denial of the relief partly because it was undisputed the DOE did not implement services pursuant to the IEP, IESP, or pendency); SRO No. 23-167 (an untimely TDN warranted a 10% reduction when there was no evidence of the parents impeding the process); SRO No. 23-028 (a reduction of 10% in tuition for the parents' failure to file a TDN was warranted in light of the parents' cooperation); SRO No. 22-131 (denying in full the parents' requested relief when no TDN filed and the parents were not cooperative); and, SRO No. 21-117 (reducing requested tuition by 50% because the TDN filing was late and the parents were generally uncooperative amongst other

considerations). In one case, the District Court upheld the SRO's determination that the Parents' failure to comply with the TDN requirement justified a $2,000 deduction from the total amount of the award. *Erde v. Banks*, No. 21CV9285VSBVF, 2022 WL 18461297, at *8 (S.D.N.Y. Dec. 28, 2022), *report and recommendation adopted*, No. 21-CV-9285 (VSB)(VF), 2023 WL 373156 (S.D.N.Y. Jan. 24, 2023).

The *Erde* District Court gave deference to the SRO since the SRO's determination was made after a "thorough and careful equities analysis" underlying its decision. *Id.*[5] Here, the SRO conducted a similarly thorough and careful analysis of the equities in the matter. The SRO reviewed the timeline of events and carefully considered the District's and Parents' obligations under the law. SD23-25. The Parents failed to give the District timely notice of their intent to place the Student in a unilateral placement, and the SRO appropriately penalized the Parents for this failure. *Id.* at 25.

Regarding the second point, case law is well settled that a parent's preference for a private programming is not dispositive, in a FAPE equities' review. *See Student with a Disability* SRO No. 05-070; SRO No. 03-003. In looking at the equity prong, the question is whether the parties acted reasonably, taking into account the considerations and factors of the case as a whole. *See Student with a Disability*, SRO No. 07-098. So long as parents cooperate with the district, and do not impede the District's efforts to offer a FAPE, even if the parents had no intention of placing the student in the District's recommended program, the Second Circuit has ruled that that the parents' plan to unilaterally place a student, by itself, is not a basis to deny their requested relief. *See E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 461 (2d Cir. 2014); *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 840 (2d Cir. 2014)(holding that the parents' "pursuit of a

---

[5] The IHO did not address equitable considerations because of its finding that Eagle Hill was not appropriate. I23.

private placement was not a basis for denying their [request for] tuition reimbursement, even assuming . . . that the parents never intended to keep [the student] in public school"). Moreover, "[i]n the absence of evidence demonstrating that the Parents failed to cooperate in the development of the IEP or otherwise engaged in conduct that precluded the development of an appropriate IEP, equitable considerations generally support a claim of tuition reimbursement." *See Student with a Disability*, SRO No. 05-030.

Nonetheless, the Parents credibly testified that they *did* want a public school placement and visited the recommended placement. T. 481-82; SD24. As the SRO noted in its review of the case's timeline, the Parents signed a contract with Eagle Hill on January 24, 2020, approximately 4 months before the IEP meeting. *Id.* at 24. Notably, the evidence shows that the Parents first notified the District of their request for services before they signed a contract with Eagle Hill. IHO Decision, 7. In addition, an equities determination involves weighing the actions of both parties including the District's failure to offer a FAPE. *See Student with a Disability*, SRO No. 04-045. In the matter at hand, the District was found to have failed to provide the Student with a FAPE, and this factor should weigh heavily in the Parents' favor. IHO Decision at p.16. None of the District's other arguments concerning equities are relevant because ultimately there is nothing in the hearing record to suggest, let alone demonstrate, that the Parents committed misconduct, were unreasonable, or interfered in any manner with the District's evaluation of the Student or prevented it from providing him with a FAPE. SD24-25. In sum, the facts and caselaw[6], support the SRO's reasoning that equities weigh in the Parents' favor.

---

[6] In Plaintiff's Memorandum of Law, Plaintiff references cases that are irrelevant or do not detract from the SRO's ruling that equities favor the Defendants. Plaintiff's Memorandum of Law, 24-28. Many of the cases cited are also not applicable in light of the Second Circuit's ruling that parents' intent to place their child in a private school is not a basis to deny their requested relief. *See E.M.* at 461. For example, *A.H. v. New York City Dept. of Educ.*, (652 F.Supp.2d 297, 312 (E.D.N.Y. 2009), is not instructive on the issue of equities since it was reversed and remanded by the Second Circuit, who found the District had provided a FAPE. *See A.H. ex rel. J.H. v. Department of Educ. of City of New York*, 394 Fed.Appx. 718 (2d Cir. 2010). Second, the Plaintiff also

## CONCLUSION

For the reasons set forth herein, the Plaintiff's motion for summary judgment should be denied in all respects, the SRO decision below should be affirmed, the Complaint should be dismissed with prejudice and the Defendant should be granted such other and further relief as the Court may deem just and proper.

Dated: April 5, 2024
New York, New York                    Respectfully submitted,

                                      THE LAW OFFICE OF NEAL H. ROSENBERG

                                      By:_____
                                          Neal Rosenberg, Esq.
                                          Michael Mastrangelo, Esq.
                                          Law Offices of Neal H. Rosenberg
                                          111 John Street, 22nd Floor
                                          New York, New York 10038
                                          (212) 732-9450

---

misapplies the District Court's brief reference to parental intent in *C.W.L. and E.L. v. Pelham Union Free School District*. 149 F.Supp.3d 451, 467 (S.D.N.Y. 2015). In *C.W.L.*, the Court was reviewing the parents' actions, in the Prong 1 context, to determine if they were prejudiced by the District's procedural violation. *Id.* Moreover, in *P.G. v. New York City Dept. of Educ.*, the Court remanded the case and did not evaluate the case on Prong 3. *P.G. v. New York City Dept. of Educ.* 959 F.Supp.2d 499, 517 (S.D.N.Y., 2013). The Plaintiff conveniently neglected to include the first part of the quote from *P.G.*, namely, "Though parents who have never sent their children to public school unquestionably have a right to seek reimbursement if the DOE fails to offer their child a FAPE, [*citing*] *C.L. v. New York City Dep't of Educ.*, 2013 WL 93361, at *9 (S.D.N.Y. Jan. 3, 2013)." *Id.* at 16; Plaintiff's Memorandum of Law, 25. And, unlike the parent in *P.G.*, here the Parent's testimony did not cast doubt on his interest in a public school placement. Tr. 481-82. Furthermore, the Parents here are unlike those in the *J.P.* case who were "gaming the system" because they paid half the tuition before getting a placement and were not engaged in development of the IEP. *J.P. ex rel. D.P. v. New York City Dept. of Educ.*, 2012 WL 359977, at *14 (E.D.N.Y. 2012). Additionally, here, the Parents were cooperative with the school district and did not make a final payment toward tuition before the notifying the District that the Student's IEP was up for review. *Cf. Stevens ex rel. E.L. v. New York City Dept. of Educ.*, 2010 WL 1005165, at *10 (S.D.N.Y. 2010). And, finally it is important to note that in *Carmel*, the District Court admitted that the case was unique because Parents went to extremes to deceive the school district. *Carmel Central School Dist. v. V.P. ex rel. G.P.*, 373 F.Supp.2d 402, 418 (S.D.N.Y. 2005). Here, the District has not shown that the Parents thwarted the District in its FAPE obligations, in any way that was similar to the parents in *Carmel*, whose extensive and blatant noncooperation went as far as deliberately submitting incomplete records to the District and refusing to visit the recommended school placement. *Id.* at 417-418.